**In the Matter of DAIRY STORES, INC. t/a Krauzer's, Debtor.**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR DAIRY STORES, INC. t/a Krauzer's, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, Defendant.**

**Bankruptcy No. 90–34085. Adv. No. 92–3002.**

United States Bankruptcy Court, D. New Jersey.

Dec. 4, 1992.

Stuart Komrower, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ, for plaintiff.

Suzanne R. Dyer, U.S. Attorney's Office, Newark, NJ, Theodore T. Gotsch, Marc Sheris, Office of the Sol., U.S. Dept. of Labor, New York City, for defendant.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL BACKGROUND

The Chapter 11 Official Committee of Unsecured Creditors (hereinafter "committee") commenced the within adversary proceeding seeking to avoid certain payments made by debtor to the United States Department of Labor (hereinafter "Department") as preferential transfers, in violation of 11 U.S.C. § 547. The committee filed a motion for summary judgment in accordance with F.R.B.P. 7056. The Department filed a cross-motion to dismiss and for summary judgment on grounds that the payments made were not "to or for the benefit" of the United States. Based on the following findings of fact and conclusions of law, the Department's motion for summary judgment is granted.

The matter was argued before the court on May 4, 1992, and an oral opinion was delivered. At the request of counsel, this opinion constitutes the written supplement to that oral opinion.

### FACTS

The facts are not disputed. Dairy Stores, Inc. t/a Krauszer's (hereinafter "Debtor") was a New Jersey corporation operating a chain of convenience stores throughout northern and central New Jersey. Debtor operated approximately 160 stores and employed managers and clerks at each of them.

In 1981, the United States Department of Labor, Wage and Hour Division conducted an investigation of the Debtor's wage records and determined that it had violated the minimum wage and overtime provisions of the Fair Labor Standards Act.[1] The Department filed a series of law suits, pursuant to 29 U.S.C. § 217 seeking back wages owed to 34,228 past and present employees for the period from April 14, 1979 until December 31, 1987. In 1987, after five years of litigation, the parties negotiated a consent order in the United States District Court for the District of

---

1. 29 U.S.C. § 201 et seq.

New Jersey in which it was stipulated that Debtor owed a total of $4,400,000 in back wages. Debtor was restrained from further violations of the Act and from withholding the compensation due its employees. It was ordered to pay the back wages by way of the following installments: $2,000,000 due November 1, 1987; $1,250,000 due January 1, 1990; $1,150,000 due January 1, 1991. The wages were to be paid directly to the Department, which in turn undertook to disburse the monies to the employees based upon the hours they had worked.

Debtor paid the first installment as called for in November of 1987. Thereafter, and over the following two years, the debtor began experiencing severe financial difficulties, and by late 1989 it became clear that the debtor would not be in a position to make the January, 1990 payment. In December of 1989, debtor commenced negotiations with the Department and debtor's lending institutions, seeking a modification of the original payment schedule. The court which had approved the settlement agreement entered an Amendment of Order on January 1, 1990 providing for monthly payments of $25,000 from January 25, 1990 to April 25, 1990 and $50,000 payments from May 25, 1990 to December 25, 1990. The balance was made due and payable on January 1, 1991.

In accordance with the Amendment of Order, the debtor made seven payments to the Department in 1991. Debtor was unable to work through its financial difficulties, however, and on September 4, 1990, Debtor filed the within Chapter 11 bankruptcy petition. In response, the Department filed a proof of claim for the balance due under the original consent order and under the Amendment of Order.

The committee brought this adversary proceeding seeking to recover the sum of $100,000 from the Department, constituting the last two installment payments made by debtor. The committee argues that these payments were preferential and may therefore be recovered from the Department under 11 U.S.C. §§ 547 and 550.

This opinion resolves cross motions for summary judgment made by the Department and by the committee.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), and (F).

## DISCUSSION

Motions for summary judgment are governed by the Federal Rules of Bankruptcy Procedure 7056, which refers to the Federal Rules of Civil Procedure 56. That rule provides that if the court finds "that there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law", the court is empowered to enter such judgment. While it has been held that summary judgment is a "drastic remedy" and should be granted "cautiously"[2] when the test is met, the rule should be followed. *Matsushita Electrical Industrial Co. v. Zenith Radio Corporation*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The instant case, demonstrating no genuine issue as to a material fact, is one in which the rule should be implemented.

A "preference" is defined by Congress at 11 U.S.C. § 547.[3] Congress has authorized the recovery of property exchanged in a preferential transfer at 11 U.S.C. § 550.[4]

Clearly, the two $50,000.00 transfers were violative of 11 U.S.C. §§ 547(b)(2), (3),

---

**2.** *Hollinger v. Wagner Mining Equipment Company*, 667 F.2d 402, 405 (3rd Cir.1981).

**3.** (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before the transfer was made;
(3) made while the debtor was insolvent;

(4) made—
   (A) on or within 90 days before the date of the filing of the petition;

**4.** (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

and (4). They were made on account of an antecedent debt owed before the transfer was made, while the debtor was insolvent, and within 90 days of the petition date. None of this is disputed. Rather, the matter at issue here is whether or not the antecedent debt was owed "to or for the benefit of" the *Department* and, if so, whether or not recovery of the transfers may be had from the Department as the initial transferee.

■ The committee argues that the Department was the creditor to or for whom the payments were made. The uncontroverted facts show that the Department acted strictly on behalf of the employees who were ultimately entitled to the payment of back wages. The consent order entered in the original litigation required debtor to supply the Department with the names and addresses of every employee entitled to the unpaid wages. With this information available to it, the Department then acted to facilitate payment to those individuals. The Department did not assert any individual right to the monies and was at all times obligated to turn them over to the actual employees as the rightful recipients. The indebtedness was due to the employees who had performed services, and not to the Department. In fact, the debtor remained liable to the employees until such time as they were fully paid by the Department.

A preferential transfer is a payment on account of an antecedent debt and cannot exist in the absence of an extension of credit. *In re Timber Line, Ltd.*, 59 B.R. 728, 731 (Bankr.S.D.N.Y.1986). Since the original "credit" had not been extended by the Department, the Department cannot have been a creditor of debtor for the purposes of the transfer to the Department. Therefore, the transfer cannot have been a preference as to the Department.

■ The Committee next argues that recovery of the payments may nevertheless be had from the Department as an initial transferee. It is true that 11 U.S.C. § 550 permits the recovery of the preference from an initial transferee. Where that initial transferee is, in fact a "mere conduit of funds", the liability will not be extended to it. In *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (Bankr.S.D.N.Y.1983), Judge Galgay held that a law firm which had received funds into its escrow account was not an entity contemplated by the drafters of the code as one which should be compelled to disgorge such funds. See also, *In re Black & Geddes, Inc.*, 59 B.R. 873 (Bankr.S.D.N.Y.1986).

The committee urges that in an analogous case, *In re Fonda Group, Inc.*, 108 B.R. 956 (Bankr.D.N.J.1989) rejects the "mere conduit" theory. In that case a travel agent set up a separate account for monies received from the sale of airline tickets. The travel agent then gave a third party the right to withdraw from the fund to pay for the tickets. The third party withdrew the funds to pay the issuer of the tickets *whether or not* the customer had paid the debtor. The debtor in possession sued the issuer for the return of the funds paid within the preference period. Judge Moore rejected the claim of "mere conduit" as a factual finding and held the issuer liable for receipt of a preferential transfer. In the matter before this court, no funds were dealt with other than as funds received from the debtor and paid out to the employees.

In the instant case, the Department acted as an agent of the several employees, enforcing their rights under the Fair Labor Standards Act. It did so for what can best be described as ministerial purposes, thus avoiding the burden which would have been occasioned if each and every one of the employees had been required to bring a separate suit for recovery. Under the statute, 29 U.S.C. § 216, the Department also acted as agent for the Debtor by disbursing the monies on the debtor's behalf, also for administrative purposes. In any case, the Department itself enjoyed no benefit from receipt of the monies. It acted merely as custodian of the funds and administrator of the payments. Therefore, the Department was not an "initial transferee" within the meaning of 11 U.S.C. § 550.

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

As indicated by Judge Abram in *Black & Geddes, supra*, it may not be inequitable to allow recovery of a transfer from a receiver, who is not an "initial transferee" within the meaning of § 550, if it is shown that the transfer was preferential as to the receiver's principal, and if the receiver remains in possession and control of the property at the time the recovery is sought. Thus, if the Department were currently in possession of the funds, a recovery might be had from the Department on the grounds that those funds would be recoverable from the ultimate recipients. These are not the facts of this case, however. Here, all monies received by the Department were promptly disbursed.

### CONCLUSION

The committee's motion for summary judgment is denied; the Department's cross-motion for summary judgment, holding the Department free from liability for the preferential transfer, is granted.

IT IS SO ORDERED.